**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALFRED ALBRECHT, SR. | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO. 99-1479** |
| JEFFREY A. BEARD, Commissioner, | : | |
| Pennsylvania Department of Corrections | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                                                    July   14   , 2009

Now before the Court for the second time is the Petition of Alfred Albrecht, Sr.

("Petitioner") for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  For the

reasons set forth below, the Petition will be granted with respect to Petitioner's sentence.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

On August 8, 1980, Petitioner was convicted by a jury of one count of first degree

murder, two counts of second degree murder, and four counts of arson for the killing of his wife,

his mother, and his daughter in a fire at the family's home.[1]  Later on the same day, following a

sentencing hearing, the jury recommended a sentence of death.  Trial Tr. 8/8/80, pp. 82–83.  On

May 2, 1983, in accordance with the jury's recommendation, Petitioner was sentenced to death.

On June 23, 1986, the Pennsylvania Supreme Court affirmed Petitioner's conviction and

death sentence on direct appeal.  Commonwealth v. Albrecht ("Albrecht I"), 511 A.2d 764 (Pa.

1986).  The United States Supreme Court declined to issue a writ of certiorari on March 30,

1987.  Albrecht v. Pennsylvania, 480 U.S. 951 (1987).  Thereafter, Petitioner filed a pro se

petition for state post-conviction relief pursuant to Pennsylvania's Post-Conviction Relief Act

---

[1]      A detailed description of evidence introduced at trial is set forth in the Court's
prior opinion, Albrecht v. Horn, 314 F. Supp. 2d 451, 456–57, 464–67 (E.D. Pa. 2004).

("PCRA") and subsequently filed an amended PCRA petition with the assistance of counsel
("Amended PCRA Petition").  Petitioner soon acquired new counsel, who entered a filing on his
behalf that expressly waived all but three claims in the Amended PCRA Petition.  See
Commonwealth v. Albrecht ("Albrecht II"), 720 A.2d 693, 698 (Pa. 1998).  The lower PCRA
court dismissed the Amended PCRA Petition on January 24, 1996.  See id.  Petitioner appealed
with the assistance of another new counsel (his third on PCRA review), and the Pennsylvania
Supreme Court affirmed on November 23, 1998.  See id. at 698, 710.

On March 24, 1999, Petitioner filed the instant Petition for Writ of Habeas Corpus,
alleging fourteen grounds for relief.  On April 28, 1999, the Court issued an Order staying
Petitioner's execution until further order of Court.  Following briefing and an evidentiary
hearing, the Court ruled on the Petition on April 21, 2004.  See Albrecht v. Horn ("Albrecht III"),
314 F. Supp. 2d 451 (E.D. Pa. 2004).  The Court first denied all of Petitioner's claims concerning
the guilt phase of his trial, including his claim of actual innocence.  See id. at 463–82.  The Court
then granted relief based upon Count XI of the Petition, in which Petitioner claimed that the
sentencing-phase jury instructions were ambiguous as to whether mitigating factors must be
found unanimously, in violation of Mills v. Maryland, 486 U.S. 367 (1988).[2]  See Albrecht III,
314 F. Supp. 2d at 484–85; see also Mills, 486 U.S. at 384 (holding unconstitutional Maryland's
sentencing-phase jury instructions where the instructions created "a substantial probability that
reasonable jurors . . . well may have thought they were precluded from considering any

_____

[2]      Because the Court granted relief on Count XI, it did not reach any of Petitioner's
other claims concerning the sentencing phase of his trial.

2

mitigating evidence unless all 12 jurors agreed on the existence of a particular [mitigating] circumstance”).

The Court applied <u>Mills</u> retroactively on collateral review based upon the Third Circuit’s decision in <u>Banks v. Horn</u>, 316 F.3d 228, 235 (3d Cir. 2003), which held that <u>Mills</u> did not introduce a “new rule” for purposes of the retroactivity analysis required by <u>Teague v. Lane</u>, 489 U.S. 288 (1989).[3]  <u>See</u> <u>Albrecht III</u>, 314 F. Supp. 2d at 484–85.  On June 24, 2004, only a few months after this Court issued its <u>Albrecht III</u> decision, the United States Supreme Court reversed the Third Circuit’s retroactivity analysis in <u>Banks</u> by a five-to-four decision in <u>Beard v. Banks</u>, 524 U.S. 406 (2004).  The five-justice majority held that because it is “clear that reasonable jurists could have differed as to whether” prior Supreme Court precedent compelled the <u>Mills</u> decision, <u>Mills</u> constituted a new rule, and could not be applied retroactively on collateral review. <u>Id.</u> at 414, 416–20.

The Third Circuit issued its opinion in the instant matter on April 19, 2007, and, on the basis of the Supreme Court’s <u>Banks</u> decision, vacated this Court’s grant of relief on Petitioner’s <u>Mills</u> claim.  <u>See</u> <u>Albrecht v. Horn (“Albrecht IV”)</u>, 485 F.3d 103, 109 (3d Cir. 2007).  The Third Circuit affirmed this Court’s judgment in all other respects and remanded with instructions to deny relief on the <u>Mills</u> claim and to reach the remaining sentencing-phase issues.[4]  <u>See</u> <u>id.</u>

---

[3]      In <u>Teague</u>, the Supreme Court held that on collateral review, federal courts may not apply a new rule of criminal procedure that was established after the conviction became final unless the new rule falls into one of two narrow exceptions.  <u>See</u> 489 U.S. at 310.

[4]      As instructed by the Third Circuit, the Court will deny relief on Count XI of the Petition in the attached Order.

Petitioner again petitioned the U.S. Supreme Court for writ of certiorari, which was denied on January 7, 2008.  See Albrecht v. Beard, 128 S. Ct. 890 (2008).

In Count XIII of the Petition, Petitioner contends that his trial and appellate counsel were ineffective for failing to present and properly litigate all of the issues raised in the Petition.[5]  See Pet. ¶¶ 234–237.  In his supplemental brief, Petitioner asserts specifically that his counsel at trial and on direct appeal were ineffective for failing to raise the mitigation unanimity issue.[6]  See Pet. Supp. Mem. of Law Following Remand ("Pet. Supp. Mem.") 38–46; see also Resp. Supp. Mem. of Law Following Remand ("Resp. Supp. Mem.") 9–11.  For the reasons that follow, the Court will grant relief on Count XIII based on Petitioner's assertion that his counsel on direct appeal was ineffective for failing to raise the mitigation unanimity issue.[7]  Because the Court will grant

[5]    The Court previously denied Count XIII as it relates to issues concerning the guilt phase of Petitioner's trial, but left open all issues concerning the sentencing phase.  See Albrecht III, 314 F. Supp. 2d at 486, aff'd Albrecht IV, 485 F.3d at 136–38.

[6]    For simplicity, the Court will use "mitigation unanimity issue" as a shorthand to refer to ambiguity in jury instructions as to whether the jury must unanimously find mitigating factors in weighing whether to recommend death, as declared unconstitutional in Mills.  To be clear, Petitioner is not asserting that his counsel should have raised Mills itself.  Such an argument obviously would be illogical since Mills was not decided until two years after his direct appeal became final.  Instead, Petitioner is asserting that his counsel should have discerned and raised the mitigation unanimity issue based upon then-existing Supreme Court precedent, which Petitioner argues clearly presaged Mills.

[7]    The Supreme Court's decision in Banks does not bar the instant claim.  As discussed above, the rule of Teague applies only to claims on collateral review in federal court. Petitioner's counsel on direct appeal would not have been barred by Teague from raising the mitigation unanimity issue, and Teague does not bar Petitioner from asserting that counsel was ineffective for failing to do so.  See Judge v. Beard, 611 F. Supp. 2d 415, 426–33 (E.D. Pa. 2009) (granting writ because trial counsel in 1987 was ineffective for failing to raise mitigation unanimity issue); Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008) (vacating grant of writ on retroactive collateral application of Mills, but remanding with specific instructions for the district court to consider claim that trial counsel in 1983 and appellate counsel in 1986 were ineffective for failing to raise and litigate the mitigation unanimity issue).

4

relief on this ground, it will not reach the remaining sentencing-phase issues in Count XIII, including the contention that trial counsel was ineffective for failing to raise the mitigation unanimity issue, nor will the Court reach any of Petitioner's other outstanding claims for relief.

## II.    PROCEDURAL DEFAULT

Procedural default is a threshold issue that must be considered before any review of the merits of a claim. See, e.g., Nobles v. Johnson, 127 F.3d 409, 419–20 (5th Cir. 1997); Smith v. Dixon, 14 F.3d 956, 962 (4th Cir. 1994).  Respondent argues that because Petitioner's claims are procedurally defaulted, the Court is barred from proceeding. See Resp. Supp. Mem. 1–3.  If a state's procedural rules bar a petitioner from seeking further relief in the state courts, this absence of an available state corrective process is known as a procedural default. See Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).  Claims deemed procedurally defaulted typically may not be considered by federal courts. See id.  However, if the state procedural rule barring a claim was not "independent" and "adequate," the federal court may proceed to consider the merits of the claim. See Szuchon v. Lehman, 273 F.3d 299, 325 (3d Cir. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)).[8]

In the instant matter, the Pennsylvania Supreme Court in Albrecht II held that most of Petitioner's claims were waived at the PCRA appellate stage as a result of his trial-stage PCRA

---

[8]    A procedural rule is independent so long as it is not so "interwoven with federal law" that it cannot be said to be based on independent state law. Coleman, 501 U.S. at 725 (quoting Michigan v. Long, 463 U.S. 1032, 1040–41 (1983)).  "A procedural rule is adequate only if it is firmly established, readily ascertainable, and regularly followed." Szuchon, 273 F.3d at 325.

counsel's decision to waive all but three claims in the Amended PCRA Petition.[9]  See Albrecht II, 720 A.2d at 698–701.  This Court held that it must reach the waived claims on the merits despite Petitioner's procedural default because the state waiver rule was not adequate and independent at the time it was applied to Petitioner.[10]  See Albrecht III, 314 F. Supp. 2d at 458–61.  The Third Circuit affirmed that holding.  See Albrecht IV, 485 F.3d at 114–16, 136–37.

        Respondent specifically contends that Petitioner is procedurally barred from review by this Court because he failed to present the state courts a fair opportunity to address a number of the claims raised in the Petition.  See Resp. Supp. Mem. 1–3.  If Respondent is correct as to the instant contention that appellate counsel was ineffective for failing to raise the mitigation unanimity issue, the Court would be unable to reach the claim's merits.[11]  The Pennsylvania Supreme Court did not explicitly refer in its PCRA opinion to the instant contention.  Therefore, the Court must determine whether the instant contention was presented to but implicitly deemed waived by the Pennsylvania Supreme Court, in which case the Court may reach the issue on the

---

        [9]     The three claims trial-stage PCRA counsel preserved were unrelated to Mills.  See Albrecht II, 720 A.2d at 706–10.

        [10]    Prior to Albrecht II, it had been the "practice" of Pennsylvania courts to decline to apply ordinary waiver principles in capital cases.  See id. at 700.  The Pennsylvania Supreme Court held in Albrecht II that it would no longer apply its relaxed waiver doctrine on PCRA review, and stated that it would only overlook the waiver if Petitioner could meet a three-part test evaluating the merits of the claim and the alleged ineffectiveness of his counsel.  See id. at 700–01.  Because the unforgiving waiver rule employed by the state Supreme Court in Albrecht II was not "consistently and regularly applied" at the time of Petitioner's default, the Court held it was not "adequate" and thus did not bar federal habeas review of the claims deemed waived.  See Albrecht III, 314 F. Supp. 2d at 459–61 (quoting Doctor v. Walters, 96 F.3d 675, 683–84 (3d Cir. 1996)).

        [11]    Specifically, Respondent maintains that Petitioner waived the claim by failing to present it, thus establishing a procedural default on an independent and adequate state ground.

merits, or whether Petitioner simply failed to present the instant argument, in which case this
Court may not proceed to the merits.[12]

The Amended PCRA Petition included an allegation that trial counsel was ineffective for
failing to raise the apparent unanimity requirement in the sentencing-phase jury instructions.  See
Amended PCRA Pet. at ¶ BW at p.16.  While that contention in the Amended PCRA Petition is
somewhat ambiguous as to whether it is raising the mitigation unanimity issue or a statutory
issue, the Pennsylvania Supreme Court, in ruling on the Amended PCRA Petition, explicitly
recognized and considered the contention that trial counsel was ineffective for failing to raise the
mitigation unanimity issue.[13]  See Albrecht II, 720 A.2d at 706.  Therefore, the court understood
the Amended PCRA Petition to have raised the issue of trial counsel's ineffectiveness with
regard to the mitigation unanimity issue.  Cf. id. at 704 (refusing to consider an issue because it
was not raised in the initial pro se PCRA Petition or in the Amended PCRA Petition).  Further,
Petitioner contended in his Amended PCRA Petition that his counsel on direct appeal was

---

[12]      The Court noted in passing and without analysis in Albrecht III that "[i]t is not
clear the extent to which Count[] XIII . . . [was] presented to the Pennsylvania Supreme Court,
but the Supreme Court did not consider [it] either on direct appeal or on PCRA review."
Albrecht III, 314 F. Supp. 2d at 458.  However, the Third Circuit in Albrecht IV ordered the
Court to reach the sentencing-phase claims, including Count XIII, and vacated the Court's Order
denying the sentencing-phase aspects of Count XIII as moot.  See Albrecht IV, 485 F.3d at 109.
As ordered by the Third Circuit, the Court will now visit anew, with full analysis, the issue of
whether the instant aspect of Count XIII was presented to and decided by the Pennsylvania
Supreme Court.

[13]      The Pennsylvania Supreme Court refused to reach the merits of that issue on
waiver grounds, however.  See Albrecht II, 720 A.2d at 706.  Specifically, it held that Petitioner
could not overcome the waiver on the basis of its view that the underlying Mills claim was not
meritorious.  See id.

ineffective for failing to raise the trial-level errors discussed in the same Petition.  See Amended PCRA Pet. ¶ B at p.17.

Adding together the Albrecht II opinion and the two contentions in the Amended PCRA Petition mentioned above, it is clear that the state Supreme Court was presented with, but deemed waived, the instant contention concerning appellate counsel.  Cf. Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim.").  Clearly, if the Pennsylvania Supreme Court was alerted to the trial-level ineffectiveness claim, it had to have been alerted to the appellate-level ineffectiveness claim.  Its ruling that the underlying Mills claim was meritless meant that Petitioner could not possibly overcome his PCRA counsel's waiver.  While the court failed to mention appellate counsel, it clearly deemed the issue waived.

The Third Circuit previously affirmed this Court's ruling that the Supreme Court of Pennsylvania's refusal to reach the issues in the Amended PCRA Petition on waiver grounds was not an adequate ground for establishing procedural default.  See Albrecht IV, 485 F.3d at 114–16.  Accordingly, under the analysis of Albrecht IV, the Court is able to reach the merits of the instant claim.[14]

## III.    STANDARD OF REVIEW

---

[14]    Alternatively, if the Supreme Court of Pennsylvania is seen as ignoring rather than deeming waived the instant contention, the Court is free to reach the claim because federal courts may reach claims on habeas that were fairly presented but ignored by state courts.  See Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

Because the Pennsylvania Supreme Court did not reach the question of appellate counsel's alleged ineffectiveness with regard to the mitigation unanimity issue on the merits, the Court's review of this argument is de novo.  See 28 U.S.C. § 2254(d); Appel, 250 F.3d at 210.

The Sixth Amendment of the United States Constitution establishes the right to effective assistance of counsel.  To demonstrate a Sixth Amendment violation, Petitioner must prove: (1) that his "counsel's performance was deficient" and (2) that the deficient performance prejudiced him.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Petitioner's burden under the first prong of Strickland is to show that his counsel's representation fell below an "objective standard of reasonableness."  Id. at 688.  The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound [legal] strategy.'"  Id. at 689.  Under the second prong of the Strickland test, "[i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."  Id. at 693.  At the same time, Petitioner need not establish with certainty that the outcome of the proceeding would have been different; the question, instead, is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

## IV.   ANALYSIS

Petitioner asserts that his counsel on direct appeal fell below reasonable professional standards by failing to raise the mitigation unanimity issue.  The Third Circuit has held that the sentencing-phase jury instructions in the instant matter violated the rule announced in Mills.  See

9

Albrecht IV, 485 F.3d at 118–19.  Accordingly, the only questions as to the first prong of

Strickland are: (A) whether counsel on direct appeal could have raised the mitigation unanimity

issue, notwithstanding trial counsel's failure to do so; and (B) whether appellate counsel was

professionally obligated to raise the issue when Petitioner's direct appeal became final in June

1986, two years before Mills was decided.

    **A.**    **Appellate Counsel's Ability to Raise Claim**

    In 1986, Pennsylvania courts applied a relaxed waiver doctrine in capital cases on direct

appeal.  See Commonwealth v. Freeman, 827 A.2d 385, 396–402 (Pa. 2003) (discussing history

of the doctrine).  The doctrine was first established in Commonwealth v. Zettlemoyer, 454 A.2d

937, 955 n.19 (Pa. 1982).  By the mid-1980s, "the relaxed waiver rule became common in direct

capital appeals and ha[d] been employed to reach a wide variety of claims."  Freeman, 827 A.2d

at 400.  Under the relaxed waiver doctrine, the Pennsylvania Supreme Court "ha[d] not been

technical in applying [its] waiver rules in death penalty cases."  Commonwealth v. Billa, 555

A.2d 835, 842 (Pa. 1989).[15]  While Freeman characterized the relaxed waiver doctrine as having

been discretionary where waiver at trial was a tactical decision, see Freeman, 827 A.2d at 400

n.9, there is no reason to believe trial counsel's failure to raise the mitigation unanimity issue had

a tactical basis; trial counsel raised a litany of objections at the close of the sentencing phase, and

the instant objection could only have helped.  See Trial Tr., 8/8/80, pp. 64–70.  Accordingly, it is

virtually certain that had Petitioner's counsel raised the mitigation unanimity issue for the first

---

[15]    In the past fifteen years, the doctrine has been substantially narrowed.  See
Albrecht II, 720 A.2d at 700 (abandoning the relaxed waiver doctrine for cases on collateral
review); Freeman, 827 A.2d at 402–03 (narrowing the doctrine on direct appeal).  What is
relevant here, however, is the state of the law at the time of Petitioner's direct appeal.

time on direct appeal, the Supreme Court of Pennsylvania would have considered the argument on the merits.

### B.    Merits Analysis

To determine whether appellate counsel fell below professional standards in failing to raise the mitigation unanimity issue, the Court will survey the state of the applicable law at the time Petitioner's appeal became final.  See Medina v. DiGuglielmo, 461 F.3d 417, 428 (3d Cir. 2006) ("Of course, the state of the law is central to an evaluation of counsel's performance . . . . A reasonably competent attorney is required to know the state of the applicable law." (quoting Everett v. Beard, 290 F.3d 500, 509 (3d Cir. 2002))).  In Lockett v. Ohio, 438 U.S. 586 (1978), a plurality of the Supreme Court found Ohio's death penalty statute unconstitutional on the ground that it limited the range of mitigating evidence that could be considered by the jury at the sentencing stage.  See 438 U.S. at 604 (stating that sentencing juries must be permitted to consider "any aspect of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death").  The principle announced in Lockett was adopted by a majority of the Supreme Court in Eddings v. Oklahoma, 455 U.S. 104 (1982).  In Eddings, the Supreme Court held that the state courts had erred by refusing, as a matter of law, to consider mitigating evidence proffered by the defendant.  See 455 U.S. at 113–14.  The next Supreme Court case to apply the Lockett principle was Skipper v. South Carolina, 476 U.S. 1 (1986), decided in April, 1986, a few months before Petitioner's appeal became final.  Skipper held that states could not limit the range of mitigating evidence to be

presented at capital sentencing through the use of evidentiary rules.[16]  See 476 U.S. at 4–9;

Banks, 542 U.S. at 414 (explaining the Skipper holding).

The Mills rule prevents a single juror from blocking the remainder of the jury from

considering a mitigating circumstance.  See Mills, 486 U.S. at 375.  Thus, Mills is not a

substantial departure from the principle announced in the Lockett line of cases, and competent

appellate counsel could have, and should have, recognized and litigated the mitigation unanimity

issue based on established U.S. Supreme Court precedent.  As the Third Circuit stated in Everett,

290 F.3d at 513:

> Counsel's status as a reasonably competent attorney is not strictly confined to
> the law as enunciated by the decisions of the jurisdiction's highest court.  More
> is expected from a reasonably competent attorney, especially one in a major
> criminal case, than merely to parrot Supreme Court cases.  A law student could
> do as much.  Instead, a reasonably competent attorney will have reason to rely
> on authority, especially favorable authority, even if it had not yet been
> enunciated by the United States Supreme Court or the state's supreme court.

Though the Mills rule may not be mechanically dictated by the Lockett line of cases, reasonably

competent attorneys are required to argue beyond the most narrow four corners of precedent.

The Mills decision itself supports the Court's conclusion.  The five-justice majority

considered their decision such a small step from existing precedent that it spent a scant two

paragraphs deriving and analyzing the rule applied in the case.  See Mills, 486 U.S. at 374–75.

Notably, even the four dissenters did not question the majority's interpretation of the Lockett line

of cases, but merely disagreed as to whether the jury instructions in that case were actually

---

[16]     The only Supreme Court case in the Lockett line of cases decided after
Petitioner's direct appeal became final but before Mills was Hitchcock v. Dugger, 481 U.S. 393
(1987), which simply reiterated the Lockett rule that the sentencer must be able to consider all
mitigating evidence.  See 481 U.S. at 398–99.

12

ambiguous.  See id. at 394 (Rehnquist, J., dissenting); see also Banks, 542 U.S. at 422 n.2

(Stevens, J., dissenting) (noting this aspect of the Mills opinion).[17]

In sum, Petitioner's appellate counsel should have recognized and raised the mitigation

unanimity issue.  Indeed, there was no conceivable strategic basis for failing to do so.

Accordingly, Petitioner's appellate counsel was ineffective pursuant to the first prong of

Strickland.

Moreover, Petitioner was prejudiced by his counsel's failure.  The Third Circuit has held

that the Pennsylvania Supreme Court's Albrecht II decision denying Petitioner's Mills claim was

an unreasonable application of federal law.  See Albrecht IV, 485 F.3d at 118–19.  Therefore,

there can be no doubt Petitioner's sentencing-phase jury instructions were impermissibly vague

as to whether mitigating circumstances must be found unanimously.  The only question is

whether the Pennsylvania Supreme Court in 1986 would have seen the Lockett line of cases as

enabling such a claim.  Based on the state of the law at the time, there is a reasonable probability

that competent appellate counsel would have persuaded the court that the Lockett line of cases

rendered the sentencing-phase jury instructions unconstitutional.  Even if the Supreme Court of

Pennsylvania had denied the claim, the United States Supreme Court granted certiorari on an

identical claim only months later.[18]  See Albrecht v. Pennsylvania, 480 U.S. 951 (1987) (denying

certiorari on Petitioner's direct appeal on March 30, 1987); Mills v. Maryland, 484 U.S. 975

---

[17]     Even the Supreme Court majority in Banks stated that "reasonable jurists could
have differed as to whether the Lockett principle compelled Mills."  Banks, 542 U.S. at 414.
While it held that Mills represented an extension of the law from the Lockett line of cases, the
Banks majority acknowledged that it was not a radical departure.

[18]     Teague applies only to federal collateral review, so if the U.S. Supreme Court
granted certiorari and reversed on direct review, there would be no retroactivity problem.

(1987) (granting certiorari in the <u>Mills</u> case on December 7, 1987).  Accordingly, it is reasonable to presume Petitioner would have obtained relief on direct review on the mitigation unanimity issue had it been raised.

In reaching its conclusion, the Court is in accord with the Honorable J. Curtis Joyner's recent opinion in <u>Judge v. Beard</u>, 611 F. Supp. 2d 415 (E.D. Pa. 2009).  In that case, Judge Joyner found that the trial counsel was constitutionally ineffective for failing to raise the mitigation unanimity issue at the petitioner's trial.  <u>See</u> <u>id.</u> at 426–28.  Respondent attempts to distinguish <u>Judge v. Beard</u> on the ground that the petitioner's sentence in that case was entered in June of 1987, <u>see</u> <u>id.</u> at 417, while Petitioner's appeal in the instant matter became final a year earlier, in June of 1986.  <u>See</u> Resp. Supp. Mem. at 10–11.  However, as discussed <u>supra</u>, the only Supreme Court decision in the <u>Lockett</u> line decided between June 1986 and June 1987 was <u>Hitchcock</u>, a case that broke virtually no legal ground.  Further, given Pennsylvania's relaxed waiver doctrine as it existed in 1986, it makes no difference that <u>Judge v. Beard</u> turned on error at trial rather than on appeal.  Accordingly, <u>Judge v. Beard</u> is materially indistinguishable.

## V.    CONCLUSION

Petitioner's counsel on direct appeal was constitutionally ineffective for failing to raise the ambiguity of the sentencing-phase jury instructions.  Accordingly, a writ of habeas corpus shall issue, directing that Petitioner either be given a new sentencing hearing or be sentenced to life imprisonment.  An appropriate Order follows.